Charles A. TIERNAN, Plaintiff, Appellant,

v.

BLYTH, EASTMAN, DILLON & CO., et al., Defendants, Appellees.

No. 82–1917.

United States Court of Appeals, First Circuit.

Argued Sept. 9, 1983.

Decided Oct. 12, 1983.

Robert B. Allensworth, Boston, Mass., with whom William L. Patton, Donald M. Keller, Jr., and Ropes & Gray, Boston, Mass., were on brief, for defendants, appellees.

Before COFFIN, Circuit Judge, FAIRCHILD *, Senior Circuit Judge, and BREYER, Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Plaintiff Tiernan brought this civil suit to recover losses sustained in his securities account with defendant Blyth Eastman Dillon & Co., Incorporated ("Blyth").[1] Tiernan's complaint charged that Blyth, through its broker, was guilty of misrepresentation, deception and fraud in the conduct of his account in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1983). Tiernan specifically alleged that Blyth "churned" his account. *See* 17 C.F.R. § 240.15c1–7(a) (1983).

At trial the jury was instructed that for Tiernan to recover on a claim of churning he must prove that Blyth (1) exercised control over the securities account, (2) traded excessively in the account in light of Tiernan's stated investment objectives and the nature of his account, and (3) acted with intent to defraud or with wilful and reckless disregard for Tiernan's interests. *See Follansbee v. Davis, Skaggs & Co., Inc.,* 681 F.2d 673, 676 (9th Cir.1982); *Landry v. Hemphill, Noyes & Co.,* 473 F.2d 365, 368 n. 1 (1st Cir.1973). The court submitted a special verdict. The first question inquired whether defendant exercised control. The jury answered "No" and in keeping with their decision judgment was entered in Blyth's favor.

On appeal Tiernan asserts the district court committed two errors that justify a

Paul J. Tiernan, Littleton, Mass., for plaintiff, appellant.

* Of the Seventh Circuit, sitting by designation.

1. Some eight months after the closing of Tiernan's securities account with Blyth, the corporation was merged into Paine Webber Jackson & Curtis and now does business under that name. In keeping with the pattern established by the parties to this appeal, the defendant is referred to here as Blyth.

new trial. First, he contends the district court erred in refusing to instruct the jury that if the plaintiff has demonstrated that he routinely followed the advice of Blyth's broker, then the element of control is "met." Second, Tiernan contends the district court erred in denying his motion to amend his complaint to include a claim of the unsuitability of the investments made by Blyth in his account in violation of Rule 10b–5 and pendent state claims of misrepresentation and nondisclosure in violation of the Massachusetts Uniform Securities Act, Mass.Gen.Laws Ann. ch. 110A, § 101 et seq. (West Supp.1983–1984), and in breach of Blyth's fiduciary duty to Tiernan. We find no merit in either contention.

## I.

Judge Mazzone gave a detailed jury instruction concerning the proper factors to consider in deciding the question of control over plaintiff's securities account including:

> Who initiated the trading in the account? Did Tiernan purchase stocks not recommended to him by [the broker]? Did Tiernan act on his own? Or upon the advice of another investment service? Who initiated the trading in the account? Did Tiernan reject [the broker's] recommendations with respect to the purchase of some investments?

The jury was also instructed to consider evidence of Tiernan's general business acumen, investment background, and knowledge of the broker's investment activities. ▮ Tiernan did not object to the jury being told to consider any of these factors in deciding the question of control. Tiernan had, however, requested an instruction that "[t]he requisite degree of control in 'churning' is met where a client routinely follows the advice or recommendations of

his broker," and timely objected to the court's failure to give this additional instruction. *See* Fed.R.Civ.P. 51. Tiernan's requested instruction simply misstates the law.

Evidence that an investor routinely followed his broker's recommendations is certainly an important consideration in deciding who controlled an investment account but this evidence alone is not determinative. Considerations of the investor's sophistication in securities transactions and independent evaluation about the handling of his account are at least equally important. *See Karlen v. Ray E. Friedman & Co. Commodities,* 688 F.2d 1193, 1203 (8th Cir.1982); *Follansbee v. Davis, Skaggs & Co., Inc.,* 681 F.2d 673, 676–77 (9th Cir.1982); *Landry v. Hemphill, Noyes & Co.,* 473 F.2d 365, 373–74 (1st Cir.), *cert. denied,* 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973). To hold otherwise would prevent imputing control to the highly sophisticated investor who actively monitors his account but typically does not disagree with his broker's recommendations.

Read literally plaintiff's instruction would appear to require exactly that result: that the regular following of a broker's advice *establishes* broker control over the account. Even reading the requested instruction as plaintiff apparently advocates—that a jury may *infer* control from evidence that an investor routinely followed his broker's advice—would suggest to a jury that they may find control in the face of overwhelming evidence of an investor's sophistication, knowledge and attention to the account. The district court properly rejected the proffered instruction, stating that the routine following of a broker's advice is "an element of control" but not the determinative factor.[2]

---

**2.** The text of plaintiff's proposed jury instruction tracks the language of the Ninth Circuit in *Mihara v. Dean Witter & Co., Inc.,* 619 F.2d 814, 821 (9th Cir.1980) ("the requisite degree of control is met when the client routinely follows the recommendations of the broker"). But the *Mihara* language must be read in context; the court was considering only whether sufficient evidence would support a jury's finding of control. The Ninth Circuit has since cautioned

against construing *Mihara* "to mean that the most sophisticated investor is not in control of his account simply because he usually follows the recommendations of his broker." *Follansbee,* 681 F.2d at 677.

Of course the word "routine" might be read to encompass the concept of *blind* as well as *regular* following of the broker's recommendations. In this respect Tiernan's instruction and

**4**

To the extent the instruction may have been offered merely to emphasize the importance of evidence that Tiernan consistently followed the recommendations of the Blyth broker, no grounds for reversal of the judgment is presented.[3] The court's instruction adequately underlined the significance of who "initiated the trading in the account" and whether Tiernan rejected the broker's "recommendations with respect to the purchase of some investments." Having advised "the jury on the proper legal standards to be applied in determining the issues of fact ..., [t]he trial court is not obligated to give instructions which are erroneous or misleading." *Harrington v. United States,* 504 F.2d 1306, 1317 (1st Cir. 1974) (citations omitted).

## II.

Leave to amend a complaint following submission of a responsive pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). While "this mandate is to be heeded," the decision to grant or deny a motion to amend lies within the discretion of the district court. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). *See also Hayes v. New England Millwork Distributors, Inc.,* 602 F.2d 15, 19 (1st Cir.1979); *Ondis v. Barrows,* 538 F.2d 904, 909 (1st Cir.1976). The reviewing court will generally defer to a decision to deny the motion where an underlying basis for denial—"such as undue delay, bad faith or dilatory motive on the part of the movant ... [or] undue prejudice to the opposing party"—is "apparent or declared." *Foman v. Davis,* 371 U.S. at 182, 83 S.Ct. at 230.

■ Judge Mazzone denied Tiernan's motion to amend his complaint as "untimely," coming as it did more than two years after the filing of the original complaint. "While courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party, ... it is clear that 'undue delay' can be a basis for denial." *Hayes,* 602 F.2d at 19 (citations omitted). In *Hayes* this Circuit found a delay of more than two years sufficient to place "the burden upon the movant to show some 'valid reason for his neglect and delay.'" 602 F.2d at 20 (quoting *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469 (5th Cir.1967)). *See also Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 896 (1st Cir.1979).

Tiernan offers no justification for his delay. Like the movant in *Hayes,* Tiernan "does not argue on appeal, as he did in his motion ... before the district court, that discovery led to previously unknown facts which altered the shape of his case." 602 F.2d at 20. Indeed, Tiernan now contends that his new theories of liability are based on the same facts pled in his original complaint.

Rather than advance some excuse for his delay, Tiernan argues that it was an abuse of discretion to deny his motion to amend absent some showing of prejudice to Blyth by the addition of unsuitability or pendent state claims. Tiernan's motion to amend came a month after the date the court had originally targeted to begin trial, and only one and one-half months before the actual start of trial. The addition of claims, no matter how factually similar, grounded in legally distinct theories of liability at this late stage would have invariably delayed the resolution of the case. Although Tiernan alleged that no further discovery would have been necessary because the proposed amendments concerned the same facts and issues implicated by the churning claim already in the case, the three additional claims may well have affected defendants' planned trial strategy and tactics. The

---

the language of the *Mihara* court might be intended to mean that the blind, regular following of a broker's advice establishes broker control. This of course comes closer to the actual test for control in a churning charge. Indeed, even a sophisticated investor who blindly relinquishes all decisions to a broker may not be in control of his account. But the court's actual instruction to the jury, emphasizing the many

factors suggesting control, better conveyed this message to the jury than the misleading addition offered by Tiernan.

3. It is at least worthy of note that the record includes evidence that Tiernan actually played an active role in the handling of his securities account.

second element of a churning claim requires plaintiff to show that the *quantity* of trades was excessive in light of plaintiff's investment objectives. An unsuitability claim, which plaintiff included in his amended complaint, requires plaintiff to show that the *quality* of stocks bought was inappropriate to his investment objectives.[4] Thus, the churning claim and the unsuitability claim do not involve precisely the same issues or facts. Had the trial court granted plaintiff's motion to amend his complaint, both Blyth and the court would likely have required additional time to prepare for trial. "Given the appellant's failure to excuse in any way his delay in prosecuting his suit, we cannot describe this prejudice as insignificant." *Hayes,* 602 F.2d at 20.

The judgment for defendant is AFFIRMED.[5]

---

**4.** Tiernan now argues that no real evidentiary difference exists between claims of churning and unsuitability. In a memorandum of law opposing discovery of his income tax returns and transactions with other financial institutions filed earlier in this litigation, however, Tiernan asserted that important distinctions existed between the two claims.

**5.** We need not address the contention that the district court erred in refusing to admit expert testimony on the question of whether the securities in Tiernan's account were traded excessively or what damages may have resulted. Those issues were rendered moot by the jury's finding of no liability because Tiernan, not Blyth, was in control of the account.