**PICKER INTERNATIONAL, INC., Plaintiff,**

v.

**Bruce LEAVITT and Imaging Equipment Services, Inc., Defendants.**

Civ. A. No. 87–2828–WF.

United States District Court, D. Massachusetts.

Aug. 1, 1989.

James S. Dittmar, Widett, Slater & Goldman, Boston, Mass., for plaintiff.

Wm. Doherty, Mark Tully, Goodwin, Procter & Hoar, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

WOLF, District Judge.

On November 20, 1987, plaintiff Picker International, Inc. ("Picker") commenced this action against defendants Bruce Leavitt ("Leavitt"), a former employee of plaintiff corporation, and Imaging Equipment Services, Inc. ("Imaging Equipment") for whom Leavitt now works. In its verified complaint, Picker claims that Leavitt breached his contractual and common law obligations to Picker by continuing to service equipment to which he was assigned during his employment with Picker after he left Picker's employ, and by providing Imaging Equipment with proprietary service and repair documentation that he received in confidence from Picker. Picker further claims that Imaging Equipment solicited and induced Leavitt to breach his common law and contractual obligations to Picker and that Imaging Equipment is unlawfully enjoying the benefits of Leavitt's misappropriation of Picker's service and repair documentation.

Since this action was initiated, the parties have conducted discovery and have resolved through agreement a number of their disputes. Additionally, on September 14, 1988, Picker filed a motion for leave to file an amended complaint, seeking to conform the complaint to additional evidence of defendants' wrongful conduct of which Picker claims to have first learned during the course of discovery. Specifically, the proposed amended complaint seeks to add a claim against Leavitt and Imaging Equipment for violation of the Massachusetts Trade Secret statute and a claim against Imaging Equipment for copyright infringement (Counts VI, IX). It also contains additional factual allegations of Imaging Equipment's misappropriation of Picker's confidential service and repair documenta-

tion (Count IV) and an expanded claim regarding interference with advantageous business relations to include Picker's relationship with Universal Medical Scanners (Count X). Defendants oppose this motion.

Upon consideration of the submissions of the parties and discussions held at the March 16, 1989 conference with regard to Picker's proposed amended complaint, the court has determined that Picker's motion for leave to file an amended complaint should be allowed.

## I. BACKGROUND

Picker manufactures and services medical diagnostic equipment, including Computed Tomography Scanners ("CT Scanners"). Imaging Equipment is a competitor of Picker in the business of servicing and repairing CT Scanners manufactured by other companies. Defendant Leavitt is a former employee of Picker who now works for Imaging Equipment. In conjunction with his hiring by Picker as a service engineer, Leavitt entered into an Employee Invention and Confidential Information Agreement which prohibited him from disclosing or disseminating confidential information relating to Picker's business. Thereafter, Leavitt entered into a Confidentiality Agreement which prohibited him from directly and indirectly servicing any of Picker's equipment to which he was assigned during his employment by Picker for a one-year period following the termination of his employment.

On November 20, 1987, Picker commenced suit against Leavitt and Imaging Equipment. In its complaint, Picker claims that Leavitt had breached his contractual and common law obligations to it by continuing to service the CT Scanners to which he was assigned during his employment with Picker, and by providing Imaging Equipment with proprietary service and repair documentation that he received in confidence from Picker. Picker further claims that Imaging Equipment had solicited and induced Leavitt to breach his common law and contractual obligations to Picker and that Imaging Equipment was unlawfully enjoying the benefits of Leavitt's misappropriation of Picker's service and repair docu-

mentation. Picker also filed a motion for a preliminary injunction, seeking to enjoin Leavitt from servicing equipment to which he was assigned during his employment with Picker.

On January 6, 1988, a hearing was held regarding the motion for preliminary injunction. At that hearing, Imaging Equipment stipulated that Leavitt would not directly or indirectly service any equipment to which he was assigned during his employment with Picker during the remainder of the period specified in his Confidentiality Agreement. On that basis, the court denied Picker's motion for a preliminary injunction. Since discovery had not yet commenced, Picker informed the court that it was not seeking a preliminary injunction on the basis of its claim of misappropriation of confidential information, and the court and both parties acknowledged that presentation of this issue would await discovery.

Following the preliminary injunction hearing, this court held a scheduling conference and ordered that all discovery be completed by April 30, 1988. Although the discovery deadline was later extended to July 30, 1988, the parties continued to file a number of motions regarding discovery after that date.

Picker contends that it has diligently conducted discovery in this case. Specifically, it has conducted the deposition of Bruce Leavitt, four Imaging Equipment employees, two third-party medical facilities and CAT Associates, a shareholder in Imaging Equipment. Additionally, Picker has propounded extensive document requests to both Leavitt and Imaging Equipment.

Picker claims, however, that discovery has revealed that Imaging Equipment relies almost exclusively on confidential and/or copyrighted service manuals, schematic drawings and diagnostic software to service Picker's CT Scanners. Picker claims these manuals were developed by Picker at considerable expense and contain proprietary information. Additionally, some of the manuals used and reproduced by Imaging Equipment are copyright-protected manuals belonging to Picker. Picker feels that Imaging Equipment's improp-er use and reproduction of Picker's service and repair documentation has enabled it to avoid research and development costs, thereby allowing it to underbid Picker with respect to prospective service contracts. In effect, Picker contends that Imaging Equipment has obtained the benefit of Picker's proprietary service and repair documentation without incurring any of the substantial costs normally incident to developing such information.

More importantly, Picker notes, it was not until discovery that Picker became aware that the service and repair documentation that Imaging Equipment had received from Leavitt represented only a portion of the confidential service and repair documentation of Picker's that Imaging Equipment unlawfully possessed, reproduced and used. Picker believes that Imaging Equipment has engaged in a systematic scheme of misappropriation and unlawful copying of Picker's confidential and/or copyright-protected service and repair documents.

Accordingly, Picker moved to amend its complaint on September 14, 1988, about ten months after the filing of the original complaint. As indicated earlier, Picker seeks to add a claim against Leavitt and Imaging Equipment for violation of the Massachusetts Trade Secret statute and a claim against Imaging Equipment for copyright infringement (Counts VI, IX). Additionally, Picker asserts additional factual allegations of Imaging Equipment's misappropriation of Picker's confidential service and repair documentation (Count IV) and expands its claim regarding interference with advantageous business relations to include its relationship with Universal Medical Scanners (Count X).

Defendants opposed this motion on September 26, 1988. Since that time, Picker has filed a reply memorandum, and the parties have had extensive negotiations regarding their disputes. These negotiations led to the entry by this court of a partial final injunction on February 13, 1989.

Additionally, this court held a conference with the parties on March 16, 1989 to discuss the remaining disputes and Picker's

outstanding motion for leave to file an amended complaint. Despite continued efforts since that conference to resolve their remaining disputes, however, the parties have not been able to do so. Accordingly, in an effort to define the parameters of this lawsuit and to create a reliable schedule for this litigation, it is necessary to consider Picker's outstanding motion to amend its complaint. For the reasons set forth below, that motion will be allowed.

## II. DISCUSSION

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, permission to amend "shall be freely given when justice so requires." This does not mean that this court should automatically grant such amendment. However, as the Supreme Court stated in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

371 U.S. at 182, 83 S.Ct. at 230. As Wright & Miller point out at 6 *Federal Practice & Procedure* § 1487 (1971), the most frequent reason for denying leave to amend is that the opposing party will be prejudiced by the amended pleading.

In the instant case, Picker has articulated a number of reasons to support its position that, pursuant to Rule 15(a), justice requires that the proposed amendment be granted. For example, Picker argues that it could not file its amended complaint until well into the discovery process because it was not aware of the scope of defendants allegedly wrongful practices until it deposed Thomas Quinn, Imaging Equipment's President, and Jeff Dimitt, an Imaging Equipment employee, in June and July, 1988. Additionally, Picker repeatedly contends that defendants impeded the progress of discovery, further delaying the addition of the claims. Picker also notes that it could not amend the complaint to allege copyright violations until it had formally registered all manuals and documents which defendant wrongly reproduced. This did not occur until September, 1988.

Moreover, Picker notes that defendant will not be unduly prejudiced by the allowance of the amendment. The new claims are closely related to claims in the original complaint. *Lanigan v. LaSalle National Bank*, 108 F.R.D. 660, 663 (N.D.Ill.1985). Picker notes that in many cases where motions to amend have not been allowed because of prejudice to the opposing party, the motions followed full proceedings and judgments, and sought to raise matters not presented through years of proceeding. *See, e.g., U.S. v. United States Trust Co.*, 106 F.R.D. 474, 476 (D.Mass.1985).

Defendants' opposition to the amendment focuses particularly on the assertion that Picker is pursuing a second action in Pittsburgh, Pennsylvania in which these claims are being, or should be, litigated, *Picker International, Inc. v. Imaging Equipment Services*, No. 87–2597 (W.D.Pa. filed Dec. 3, 1987), and that the instant litigation would be delayed by such amendment since additional discovery will be necessary.

With regard to the Pittsburgh litigation, defendants note that courts consistently deny leave to amend where the claims sought to be added are already pending in another lawsuit. *See, e.g. Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1520 (9th Cir.1983), *cert. denied*, 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984) (considering issues of prejudice to opposing party, undue delay, bad faith, and futility of proposed amendment in denying motion to amend complaint). Defendants feel that Picker purposely failed to mention the Pittsburgh litigation—which, defendants argue, involves the very misappropriation claims sought to be added

here—and that this is evidence of Picker's bad faith.

Moreover, defendants contend that the additional discovery relevant to Picker's new allegations would be lengthy and would reopen discovery on issues which are much broader than those involving defendant Leavitt, and are relevant to the Pittsburgh litigation. *See, e.g., Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 4–5 (1st Cir.1983). According to the defendants, this is not a case where unknown facts altered the shape of the litigation. Rather, in defendants' view, by the time Picker instituted suit in Pittsburgh it knew that Thomas Quinn had received alleged proprietary materials during his training with Picker and had copied such materials.

To support their contentions that Picker's allegations of copyright infringement should not be allowed here, defendants quote from *Tiernan v. Blyth, Eastman, Dillon & Co., supra,* in which the district court denied a motion to amend that was made more than two years after the filing of the original complaint and for which plaintiff offered no justification for his delay.

> Tiernan's motion to amend came ... only one and one-half months before the actual start of trial. The addition of claims, no matter how factually similar, grounded in legally distinct theories of liability at this late stage would have invariably delayed the resolution of the case. Although Tiernan alleged that no further discovery would have been necessary, the three additional claims may well have affected defendants' trial strategy and tactics.

*Tiernan,* 719 F.2d at 4.

Defendant notes that Imaging Equipment has not conducted any discovery designed to defend Picker's copyright infringement claims, particularly on the issues of Picker's alleged damages, misuse of copyright, preemption of common law claims, publication and registration. Imaging Equipment asserts that the entire conduct of this litigation has been geared to the defense of the discrete claims asserted in the verified complaint relating to Leavitt and the South County Hospital and Leonard Morse Hospital contracts. Picker now seeks to add copyright claims which implicate many more documents than are now encompassed by the claims relating to Leavitt, and which potentially involve every Imaging Equipment contract to service Picker's CT Scanners. Defendants argue that such expansion of this litigation is unwarranted. *See, e.g., McCann v. Frank B. Hall & Co., Inc.,* 109 F.R.D. 363 (N.D. Ill.1986) (leave to amend denied when discovery nearly completed and amendment would add new legal theories, require substantial additional discovery, and convert a basic contract action into a high stakes tort action).

Imaging Equipment contends that not only does the Pittsburgh litigation offer a logical alternative for Picker's copyright claims, but Picker has already alleged facts relating to copyright violations in that action because the Pittsburgh complaint specifically alleges "that Imaging has made copies of the DSO2 Diagnostic software and other Trade Secrets and copyrighted and proprietary materials entrusted to it...." Pittsburgh Complaint, ¶ 32. Denial of Picker's motion will cause no prejudice to Picker, defendants argue, and will avoid the delays inherent in expanding this lawsuit to include allegations unrelated to Imaging's hiring of Leavitt.

Defendants also argue that Picker offers no justification for adding claims for violation of the Mass. Trade Secret Statute, M.G.L. c. 93, § 42, and that plaintiff has, through sleight of hand, added a claim related to Universal Medical Scanners. Picker's original claim for interference relates only to South County Hospital and Leonard Morse Hospital. Picker chose to limit that claim despite alleging that Leavitt had revealed Picker's trade secrets to Universal Medical Scanners in the course of competing for that service contract (Verified Complaint, ¶ 24) and that Leavitt stated he had successfully negotiated a contract with Universal Medical Scanners (Affidavit of Edward F. Costa, dated November 19, 1987, ¶ 13). By the end of December 1987, Imaging Equipment had begun

servicing the Universal Medical Scanners CT Scanner. In defendants' view, Picker's delay until discovery was concluded before adding a claim involving Universal Medical Scanners is inexcusable.

Although this court has considered seriously defendant's arguments in opposition to Picker's motion, it finds that Picker's motion to amend should be granted. As described earlier, Fed.R.Civ.P. 15(a) states that leave to amend a complaint "should be freely granted when justice so requires." F.R.Civ.P. Rule 15(a). The Supreme Court has held that "this mandate is to be heeded" and that a motion to amend should not be denied unless there are compelling reasons such as "undue delay, bad faith or dilatory motive on the part of the movant ... [or] undue prejudice to the opposing party." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

This court finds that Picker's motion does not involve any delay, bad faith or dilatory motive. Moreover, it does not appear that the defendants will suffer any real prejudice. This lawsuit will be extended, but that will be prejudicial to Picker if its claims are meritorious. To the extent that Imaging Equipment relies on its contention that the new claims should be litigated in Pittsburgh rather than before this court, there is no significant cognizable prejudice because the defendant will, in either event, be required to litigate the merits of the claims in some forum. If, however, Imaging Equipment would argue that the newly discovered claims could not now be properly added to the Pittsburgh litigation either, it would possibly obtain an unwarranted benefit if the motion to amend the complaint in the instant case were denied. Fed.R.Civ.P. 11 discourages the premature filing of claims without an adequate factual basis and parties should not be penalized for failing to make expansive claims until discovery demonstrates that the claims are warranted.

This is not to say that denying an amendment would be inappropriate when the proposed amended complaint is identical in form and seeks the same relief requested in a separate action. But that is not the case here. The Pittsburgh litigation focuses on the narrow claim relating to Imaging Equipment's misuse of Picker's DSO2 software and related user documentation in breach of a written license agreement. There are no allegations in the Pittsburgh case relating to Imaging Equipment's inducing ex-employees or customers of Picker to breach their contractual obligation, or to Imaging Equipment's employees' unlawfully removing Picker's propriety information from customer-hospitals. The only confidential service and repair documentation at issue in Pittsburgh is the DSO2 and related documentation which was entrusted to Imaging by Picker pursuant to the DSO2 license agreement.[1] Further, the Pittsburgh litigation does not contain claims for copyright infringement or violations of the Massachusetts Trade Secret Statute (nor, in Picker's view, could the allegations support such claims). In fact, the proposed additional claims are more closely related to those already contained in the Boston litigation than they are to those in the Pittsburgh litigation and the instant case was filed *before* the Pittsburgh litigation.

Additionally, as Picker argues, judicial economy and fairness also militate against requiring Picker to amend its complaint in Pittsburgh or to file a separate lawsuit. First, allowance of the present amendment would serve judicial economy. Many of the documents which Imaging Equipment is alleged to have misappropriated in the amended complaint are the same documents which Leavitt and Imaging Equipment are alleged to have misappropriated in the original complaint. Regardless of whether the motion to amend is allowed, there will have to be substantial evidence

---

1. Paragraph 32 of the complaint in *Picker International, Inc. v. Imaging Equipment Services, Inc.*, No. 87–2597 (W.D.Pa. filed Dec. 3, 1987), states "Upon information and belief, it is alleged that Imaging has made copies of the DSO2 Diagnostic Software and other Trade Secrets and copyrighted and proprietary materials *entrusted to it,* and is using this information in direct competition with Picker in performing service contracts at various locations thought the United States." (Emphasis added.).

and trial testimony regarding the confidentiality and proprietary nature of these documents. Moreover, because Imaging Equipment defends itself by claiming that the documents which it possesses and used did not come from Leavitt, the circumstances of the acquisition of these documents will have to be litigated. Picker simply seeks by the amendment of its complaint in the Boston litigation to charge that such other acquisition and use is also unlawful.

Second, the denial of the amendment could result in complicated questions of issue preclusion in other litigation. If Picker's motion to amend is denied, issues regarding the confidentiality of Picker's documents and Imaging Equipment's possession and use of such documents will have to be relitigated in either the Pittsburgh litigation or another lawsuit. Determination of precisely what factual issues were necessary to disposition of the instant case would be a complicated process if the claims here are limited. This task, and the risk of unfairness to the parties, can be entirely avoided by permitting the full range of Picker's claims to be litigated in this action.

Third, Imaging Equipment's allegedly improper use and reproduction of Picker's confidential and copyright protected documentation has been the subject of extensive discovery in the instant case, as has the confidentiality of Picker's service and repair documentation. As of September 30, 1988, the date of the Picker's reply brief, Imaging Equipment and Picker had conducted a total of 11 depositions covering at least 15 days and comprising more than 3,000 pages of testimony. Not one deposition had been taken in the Pittsburgh litigation. To require Picker to amend its complaint in the Pittsburgh litigation, Picker argues, would necessitate needless and repetitive discovery and would by Imaging Equipment's own admission substantially delay the adjudication of Picker's rights to protect its confidential and proprietary service and repair documentation.

Fourth, as indicated earlier, there is a risk that the United States District Court for the Western District of Pennsylvania might refuse to allow Picker to amend its complaint in the Pittsburgh litigation to include claims for violations of the Massachusetts Trade Secrets Statute and additional allegations of Leavitt's and Imaging Equipment's interference with Picker's economic relations. Picker would be substantially prejudiced if it was forced to commence a separate lawsuit to redress these grievances.

Finally, as Picker notes, it did not delay the bringing of this motion. Rather, Picker appears to have acted promptly once discovery revealed a proper factual basis for the new allegations. Delay in and of itself is not sufficient reason to deny a motion to amend a complaint; the court must also consider the prejudice to the opposing party and whether there has been "undue delay." *Tiernan,* 719 F.2d at 4. Picker's motion in this case came less than two months after the close of discovery, a date after which the parties had each submitted discovery motions, and less than a year after the action was commenced. No date had been set for trial when Picker made its motion to amend. The subject of Picker's amendments—including that regarding Universal Medical Scanners—have been the objects of discovery in this case. Part of Imaging Equipment's defense to the original claims—that the materials were solicited from sources other than Leavitt—raised the issues presented by the proposed amended complaint and made the sources of those materials subject to extensive discovery already. In the circumstances of this case, it is most appropriate to permit the amendment and reopen discovery. *See Manuel v. International Harvester Co.,* 502 F.Supp. 45, 51–52 (N.D. Ill.1980).

### III. ORDER

For the reasons stated above, it is hereby ORDERED that:

1. Picker's motion for leave to file an amended complaint is ALLOWED.

2. If there are any claims included in the proposed first amended complaint submitted on September 14, 1988 which Picker does not wish to pursue, or which have

**10**

been resolved by the partial final injunction entered on March 16, 1989 or by any other agreement between the parties, Picker should so advise the court by August 18, 1989, and Picker shall by that date file a second amended complaint which includes only the remaining claims.

3. A scheduling conference will be held on August 23, 1989 at 3:00 p.m.