**Moser, et al. v. Anderson, et al.    CV-93-634-B    09/30/96**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Pamela L. Moser, et al.

   v.                                              Civil No. 93-634-B

Carole A. Anderson, Administrator
Merrimack County House of Corrections, et al.


## MEMORANDUM AND ORDER

Pamela Moser, Nathan Strout, and Sharon Wieprecht move to certify a plaintiffs' class in their civil rights action against the Merrimack, Strafford, and Carroll County Houses of Corrections, their administrators, supervisors, and certain officers. Following a hearing, I proposed to redefine the plaintiffs' class as described in my order of July 17, 1996. The defendants object to the proposed class definition and also argue that the plaintiffs cannot meet the requirements of Federal Rule of Civil Procedure 23. I adopt the class definition described in this order and certify the class as follows.


## BACKGROUND

Pamela Moser alleges that she was strip searched on May 5,

1991, at the Merrimack County House of Corrections ("Merrimack") after being arrested for driving while intoxicated. Sharon Wieprecht alleges that she was strip searched on June 19, 1993, by the Carroll County House of Corrections ("Carroll") following her arrest for driving with two open alcoholic beverage containers in the car. Nathan Strout alleges that he was strip searched on June 4, 1993, at the Strafford County House of Corrections ("Strafford") after being placed in protective custody because he had been drinking. All three plaintiffs contend that the strip searches were conducted pursuant to the counties' standard policies and procedures and violated their Fourth and Fourteenth Amendment rights.

In response to a discovery order, the defendant counties produced lists of people who were strip searched in each county jail after being held for protective custody or for an offense no greater than a misdemeanor since May 5, 1991, for Merrimack and Carroll Counties, and since March 21, 1992, for Strafford. Merrimack listed over 900 individuals that met the discovery criteria since May 5, 1991, and Carroll listed 762 individuals. Strafford provided a list of approximately 450 individuals who were held for an offense no greater than a misdemeanor during the time the county's strip-search policy was in effect but could not

2

identify who in the group had been strip searched.

At a hearing on class certification held on April 19, 1996, the defendants counties represented that under their current practices, strip searches are only conducted when there is a reasonable suspicion that the detainee is carrying a weapon or contraband. The defendant counties all admit, however, that their jails had general policies requiring strip searches when the named plaintiffs were detained.

The plaintiffs moved to certify a plaintiffs' class pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) seeking injunctive and declaratory relief as well as compensatory and punitive damages. The defendants objected to certification. While the motion to certify the class was pending, I proposed to redefine the class as all persons who were detained in the Merrimack, Carroll, or Strafford Houses of Correction, under protective custody or for an offense no greater than a misdemeanor or a violation, which did not include the possession of weapons or contraband as an element of the offense, and who were subjected to a strip search pursuant to a custom, practice or policy after December 9, 1990. At the same time, I gave the parties an opportunity to respond to the revised class redefinition, which they have done.

3

## DISCUSSION

Defendants contend that the proposed class definition is too broad because it includes persons for whom reasonable suspicion existed to justify a strip search. Defendants also claim that the class definition improperly includes as class members persons whose claims are barred by the statute of limitations. Finally, defendants contend that, for various reasons, the proposed class fails to satisfy the requirements of Rule 23. I examine each argument in turn.

## I. CLASS DEFINITION

### A. Should the class be limited to persons who were strip searched without reasonable suspicion?

Defendants argue that prison officials may lawfully strip search a detainee if they have a reasonable suspicion that the search will yield contraband or weapons. Accordingly, they assert that the proposed class improperly includes persons who were lawfully strip searched based on reasonable suspicion. Even if I accept the premise underlying defendants' argument, I do not agree that the detainees who were lawfully strip searched should be excluded from the class at this early stage of the proceedings. The most recent edition of the Manual For Complex Litigation wisely counsels that proposed classes should be defined by using objective criteria that do not depend upon the

4

merits of the underlying case. Manual for Complex Litigation §
30.14 (3d ed. 1995). The obvious reason for this advice is that
if proposed classes were defined by reference to the merits, the
court could not identify proposed class members without making
the type of inquiry into the merits that the United States
Supreme Court has held to be improper at the class certification
stage. Forma v. Data Transfer, Inc., 164 F.R.D. 400, 402 (E.D.
Pa. 1995) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156,
177-78 (1974)). Accordingly, I reject defendants' claim that the
proposed class definition is overly broad.

**B.    Should the proposed class definition be modified
        because it includes as class members persons whose
        claims are barred by the statute of limitations?**

Potential differences in the application of a statute of
limitations to individual class members do not necessarily
preclude class certification if common issues shared by the class
predominate. See, e.g., Gunter v. Ridgewood Energy Corp., 164
F.R.D. 391, 399 (D.N.J. 1996). However, as the parties have
addressed the statute of limitations issue, I examine the issue
in determining how the class should be defined.

The parties do not dispute that New Hampshire's three-year
statute of limitations applies to the plaintiffs' claims. See
N.H. Rev. St. Ann. § 508:4(I) (Supp. 1995). However, they

disagree about when the suit began in order to compute the date of the class's earliest allowable claims. A federal question suit is commenced, and the limitations period is tolled, when the complaint is filed in federal court even if the limitations period is borrowed from state law. West v. Conrail, 481 U.S. 35, 37-8 (1987); McIntosh v. Antonino, 71 F.3d 29, 36 (1st Cir. 1995). Accordingly, I must determine when suit was filed for purposes of tolling the statute of limitations.

Pamela Moser filed her initial complaint against Merrimack on December 3, 1993.[1] Moser then moved to amend her complaint on June 10, 1994 to add individual Merrimack defendants and allege a class action on behalf of all persons who were held on misdemeanor or violation charges at any of the New Hampshire Houses of Correction and were strip searched pursuant to a custom, practice, or policy. However, the June 10 complaint did not attempt to name any of the other counties as defendants. On February 15, 1995, Moser again amended her complaint to add as defendants Strafford and Carroll Counties, and the present and former administrators and corrections officers of those jails. The Merrimack defendants contend that the class action against

---

[1] The proposed class definition was based on the erroneous assumption that the original complaint was filed on December 6, 1993.

them was not commenced until Moser moved to amend her complaint to add the class claims on June 10, 1994, while the Carroll and Strafford defendants argue that no action was commenced against them until Sharon Wieprecht and Nathan Strout moved to intervene in the action on July 10, 1995. The plaintiffs argue that the class action against all defendants relates back to the filing date of Moser's individual complaint on December 3, 1993.

### 1. The class claims against the Merrimack County defendants

The relation-back provisions of Federal Rule of Civil Procedure 15(c) expressly apply only to claims against new defendants. However, similar considerations apply when considering claims by new plaintiffs. Fed. R. Civ. P. 15 advisory committee's note; see also Allied Int'l v. International Longshoremen's Ass'n, 814 F.2d 32, 35 (1st Cir.), cert. denied, 484 U.S. 820 (1987); Cicchetti v. Lucey, 514 F.2d 362, 367 (1st Cir. 1975). In this circuit, the claims of a new plaintiff or plaintiffs will relate back to the original complaint if three requirements are met: First, "the amended complaint must arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading;" second, "there must be sufficient identity of interest between the new plaintiff, the old plaintiff, and their respective claims so that

7

the defendants can be said to have been given fair notice of the latecomer's claim against them;" and third, "undue prejudice must be absent." Allied Int'l, 814 F.2d at 35-36. Other courts have taken into consideration a similar set of concerns. See, e.g., Avila v. INS, 731 F.2d 616, 620 (9th Cir. 1984) ("notice to the opposing party of the existence and involvement of the new plaintiff is the critical element"); Paskuly v. Marshall Field & Co., 646 F.2d 1210, 1211 (7th Cir.) (defendant employer adequately notified of potential class claim by reference to practices that discriminate against women in individual complaint), cert. denied, 454 U.S. 863 (1981); In re Syntex Corp. Securities Litigation, 855 F. Supp. 1086, 1098 (N.D. Cal. 1994) (relation back allowed only if "(1) the defendant received within the limitations period adequate notice of the claims of the newly proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original and newly proposed plaintiff") (citations omitted), aff'd, No. 94-16156, 1996 WL 518066 (9th Cir. Sept. 13, 1996); Langley v. Coughlin, 715 F. Supp. 522, 553 n.31 (S.D.N.Y.) (individual inmate's claim for injunctive relief put defendants on notice of potential class claim), appeal dismissed, 888 F.2d 252 (2d Cir. 1989); Page v. Pension Benefit

8

Guar. Corp., 130 F.R.D. 510, 511-14 (D.D.C. 1990) (added class's claims must arise from same conduct, transaction, or occurrence, and defendant must have notice within limitations period of the claims and the potential class); Doe v. Calumet City, Ill., 128 F.R.D. 93, 94 (N.D. Ill. 1989) (examining individual plaintiff's claim based on strip search policy and concluding it was sufficiently similar to class's claim to adequately notify defendants). See also Grayson v. K Mart Corp., 79 F.3d 1086, 1105-07 (11th Cir. 1996) (class action amendment relates back to date of filing individual claim but ADEA claimants do not commence an action until they "opt in" to the class and administrative notice to EEOC must include at least implication of a class to allow notice on behalf of the class), petition for cert. filed, 65 U.S.L.W. 3085 (U.S. July 18, 1996) (No. 96-98).

Moser's original complaint alleged that she was illegally strip searched after being arrested for driving while intoxicated pursuant to a standard policy adopted by the Merrimack County Jail. Approximately six months later, she moved to amend her complaint to add a class "of all New Hampshire House of Correction Detainees who having been arrested on misdemeanor and/or violation charges, or held for protective custody were subjected to a strip search pursuant to custom, practice and/or

policy." Her individual complaint suggested the existence of a group of people who were unconstitutionally subjected to the county's standard strip search policy, and her class claims were based on the same allegedly unconstitutional policy. Accordingly, the class claims arose from the same allegedly unconstitutional course of conduct described in the original complaint and there is sufficient identity of interest between Moser's claim and the class claims to adequately notify the defendants of their claims. See Doe, 128 F.R.D. at 95. Since the Merrimack defendants do not identify any other unfair prejudice, the class claims against the Merrimack defendants will be deemed to relate back to the filing of the original complaint.[2]

   2.   The class claims against the Strafford
        and Carroll County defendants

Moser's original complaint makes no mention of strip searches conducted at other county jails. Although the first amended complaint adds claims on behalf detainees who were strip searched at all New Hampshire Houses of Correction, Moser did not attempt to add any other counties as defendants until she filed

_____

   [2] The Magistrate Judge has already determined that Moser's claims against the individual defendants added by the June 10, 1994 amended complaint relate back to the filing of the original complaint.

10

her second amended complaint on February 15, 1995.  Moreover, there is no evidence in the record suggesting that the Strafford or Carroll defendants received notice of her allegations prior to being served with the second amended complaint.  Thus, plaintiffs' claims against the Strafford and Carroll County defendants do not relate back to either the original complaint or the first amended complaint.  See, e.g., Fed. R. Civ. P. 15(c) (allowing relation back to claims against a new defendant only where the new defendant "has received such notice of the institution of the [original] action that the party will not be prejudiced in maintaining a defense on the merits").  In summary, the class is redefined as follows:  all persons who were held in the defendants' jails in protective custody or for an offense no greater than a misdemeanor or a violation, which did not include the possession of weapons or contraband as an element of the offense, and who were subjected to a strip search pursuant to the defendants' custom, practice, or policy after December 3, 1990, in Merrimack County House of Corrections, and after February 15, 1992, in Strafford and Carroll County Houses of Corrections.[3]

---

[3]  To the extent that potential members of the class would have to argue that the statute of limitations should be tolled under their particular circumstances in order to fall within the definition time periods, they do not meet the class as it is defined and cannot be included.

11

## II.  CLASS CERTIFICATION

To certify a proposed class, plaintiffs first must satisfy the four prerequisites of Rule 23(a):  numerosity, commonality, typicality, and adequacy.  If those requirements are satisfied, the class then must also meet the characteristics of at least one of the three categories provided in Rule 23(b).  The plaintiff bears the burden of establishing all of the requirements for class certification.  Makuc v. American Honda Motor Co., 835 F.2d 389, 394 (1st Cir. 1987).  Issues of class certification may be resolved on the pleadings alone or may require an evidentiary hearing depending on the court's evaluation of the circumstances presented in each case.  Lamphere v. Brown Univ., 553 F.2d 714, 719 (1st Cir. 1977) ("The underlying theme is flexibility; different cases call for different approaches.").  Thus, if a defendant produces evidence that undermines any part of the necessary factual framework of the plaintiff's certification motion, the court will look at enough evidence beyond the pleadings to determine whether the named plaintiff has met her burden under Rule 23.  In all cases, the court must rigorously analyze the proposed class as to each of the Rule 23(a) prerequisites and then determine whether the class is maintainable under any part of Rule 23(b).  General Tel. Co. of

Southwest v. Falcon, 457 U.S. 147, 161 (1982). Nevertheless, class certification is a preliminary determination to be made without an evaluation of the likelihood of the success of the plaintiffs' claims on the merits. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). With these principles in mind, I analyze the plaintiffs' motion for class certification.

**A.  Rule 23(a)**

The first two prerequisites of Rule 23(a), numerosity and commonality, require the named plaintiffs to show that an identifiable class exists. The second two prerequisites, typicality and adequacy, require the plaintiffs to show that they are appropriate representatives of the class. See 1 Herbert Newberg & Alba Conte, Newberg on Class Actions § 3.01 (3d ed. 1992); see also Crosby v. Social Sec. Admin., 796 F.2d 576, 579-80 (1st Cir. 1986).

### 1.  Numerosity

For the plaintiffs to be sufficiently numerous to demonstrate a need for a class, "joinder of all members [must be] impracticable." Fed. R. Civ. P. 23(a). The number of class members that will be required to satisfy the numerosity requirement will depend upon the specific facts and circumstances of each case. General Tel. Co. of the Northwest v. EEOC, 446

13

U.S. 318, 330 (1980). If the proposed class is small, other factors to consider are whether all members of the class are from the same geographical area and whether members can be easily identified. Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir. 1985), cert. denied, 476 U.S. 1172 (1986). Joinder need not be impossible to be impracticable, and "a showing of strong litigational hardship or inconvenience should be sufficient." 1 Newberg § 3.04. While plaintiffs are not required to identify each member or precisely establish the size of the class to satisfy the numerosity requirement, mere speculation is insufficient. Makuc, 835 F.2d at 394-95; 1 Newberg § 3.05.

Plaintiffs seek to satisfy the numerosity requirement by pointing to the lists of hundreds of people produced by the defendants in response to discovery seeking persons who were strip searched pursuant to county policy while detained either in protective custody or for offenses no greater than misdemeanor. The plaintiffs' proposed class is narrower, however, than the group described in the discovery request, which covers a broader time period than the proposed class and is not limited to misdemeanors that do not include possession of weapons or contraband as an element of the offense. Although it is not

14

possible on the present record to identify with certainty which people listed in the discovery responses would fit the class, a general indication of class size is ascertainable.

Of the 206 instances of strip searches of detainees listed by Carroll County for 1991, approximately 93 people were characterized only as protective custody detainees.[4] Approximately 55 more people were listed as having been detained for driving after suspension, revocation, or without a valid license, or driving while intoxicated. Of the nearly 450 individuals listed by Strafford County, approximately 35 were held for unpaid fines, nonsupport, bad checks, and failure to appear, and at least another 65 were held for driving while intoxicated without other aggravating circumstances being listed. Merrimack County's list of more than 900 names does not specify the reason for each individual's detention.

Although the number of class members is far from certain at this stage, the information in the record supports a tentative determination that the proposed class is sufficiently numerous to make joinder impracticable. Therefore, plaintiffs have met the numerosity requirement subject to re-evaluation.

---

[4] Several people were listed more than once making the total number of instances higher than the number of different individuals affected.

        2.    Commonality

     The commonality prerequisite is met if "there are questions
of law or fact common to the class."  Fed. R. Civ. P. 23(a).
Because the class must share only a single legal or factual issue
at this stage of the analysis, ordinarily the commonality
requirement is satisfied easily.  1 Newberg § 3.10 at 3-50.
Individualized issues among the class members will not prevent a
finding of commonality as long as the class members have at least
one issue in common.  Sterling v. Velsicol Chem. Corp., 855 F.2d
1188, 1197 (6th Cir. 1988).

     Plaintiffs address the commonality requirement by asserting
that the defendants subjected members of the proposed class to
strip searches pursuant to unconstitutional policies that
permitted strip searches of arrestees and detainees when there
was no reasonable basis to suspect that they were concealing
weapons or contraband.  "Where a question of law refers to
standardized conduct of the defendant toward members of the
proposed class, commonality is usually met."  Curtis v.
Commissioner, Maine Dept. of Human Servs., 159 F.R.D. 339, 341
(D. Me. 1994).  Although the defendants include three different
county jails and two time periods, the defendants have not
claimed that the strip-search policies or practices were

                                16

materially different at each facility or during the time periods in the definition.  The defendants' argument that many individuals listed in their discovery responses presented circumstances that would constitutionally justify strip searches ignores the narrowly defined plaintiff class.  Therefore, the plaintiff class, as defined, shares a common legal issue of the constitutionality of the defendants' strip search policies and practices under the particular circumstances described.

      3.   Typicality

To satisfy the typicality requirement, the class representatives' injuries must arise from the same event or course of conduct as the injuries of other class members, and their claims must be based on the same legal theory.  Modell v. Eliot Sav. Bank, 139 F.R.D. 17, 22 (D. Mass. 1991).  Thus, their claims need not be identical because "[t]he question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs."  Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1988) (citation ommitted).

Each of the named plaintiffs, Moser, Strout, and Wieprecht, alleges that he or she was strip searched while being detained at one of the defendant jails either in protective custody or for an offense no greater than a misdemeanor that did not include possession of contraband or weapons as an element of the offense. Strafford County argues that the circumstances of Strout's detention for protective custody after driving while intoxicated are not typical of other potential class members who were held for possession or sale of marijuana, assault, or shoplifting. Merrimack and Carroll make similar arguments against Moser and Wieprecht as class representatives. The defendant counties again miss the narrow focus of the plaintiffs' proposed class that excludes anyone who was detained for an offense involving possession of weapons or contraband. Thus, while Strout's claim may not be typical of persons who were arrested for marijuana possession, the proposed class definition excludes those arrestees from the class. Therefore, because the proposed class is narrowly defined to mirror the named plaintiffs' circumstances of detention, I find that the named plaintiffs' claims are typical of the class they propose to represent.

4. <u>Adequacy</u>

The fourth prerequisite of Rule 23(a) is that the representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Although the defendants do not dispute the adequacy of the named plaintiffs to serve as representative parties, I review the requirements of adequate representation to protect the due process rights of absent class members. <u>See</u> <u>Key v. Gillette Co.</u>, 782 F.2d 5, 7 (1st Cir. 1986). The inquiry into adequate representation has two parts: (1) whether the interests of the representative parties will conflict with the interests of any class members, and (2) whether the representative parties' counsel is "qualified, experienced and able to vigorously conduct the proposed litigation." <u>Andrews</u>, 780 F.2d at 130 (citations ommitted); <u>accord</u> <u>Curtis</u>, 159 F.R.D. at 341.

The parties have not identified any potential conflicts between the claims of the named plaintiffs and the proposed class members, and I find none. The named plaintiffs are represented by competent and experienced counsel.[5] Finding no indications to

---

[5] Attorneys Dort Bigg and Michael Delaney from Wiggin & Nourie, Professional Association, of Manchester, New Hampshire, represent the plaintiffs. Because Mr. Delaney has been in practice for only a year and a half, Mr. Bigg, who is experienced in handling complex cases, will serve as lead counsel.

19

the contrary, I conclude that the named plaintiffs will fairly and adequately represent the class.

## B.  Rule 23(b)

When the plaintiffs satisfy all of the Rule 23(a) prerequisites, they must then show that a class action is an appropriate procedural method for maintaining the suit under at least one of the Rule 23(b) categories.  1 Newberg § 4.01.  The plaintiffs seek to maintain their class under both (b)(2) and (b)(3).  I examine each category in turn.

### 1.  Rule 23(b)(2)

The plaintiffs seek both a declaratory judgment that the defendants' strip search policies and practices are unconstitutional and an injunction to prevent future unconstitutional strip searches.  The defendants challenge the named plaintiffs' standing to seek declaratory and injunctive relief on the grounds that they are unlikely to be subjected to strip searches in the future.

Before a class can be certified, the named plaintiffs must have standing to bring the asserted claims.  O'Shea v. Littleton, 414 U.S. 488, 494 (1974); see also 1 Newberg § 2.06.  To seek "forward-looking relief," the plaintiffs must allege that the defendants' wrongful conduct "constitutes 'an invasion of a

legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" Adarand Constructors, Inc. v. Pena, 115 S. Ct. 2097, 2104 (1995) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). In City of Los Angeles v. Lyons, the Supreme Court held that the plaintiff's past injury caused by an officer's use of a chokehold during a routine traffic stop did not confer standing to seek an injunction because the plaintiff could not show "a sufficient likelihood that he will again be wronged in a similar way." Lyons, 461 U.S. 95, 111 (1983). Thus, a plaintiff must show that the requested injunction will provide relief to her personally. American Postal Workers Union v. Frank, 968 F.2d 1373, 1376 (1st Cir. 1992).

To meet the standing requirement, the named plaintiffs must be able to demonstrate that a "real and immediate threat" exists both that they will again be detained in one of the defendants' jails, and that they will be strip searched. See Lyons 461 U.S. at 105-06; Brown v. Hot, Sexy and Safer Prod., 68 F.3d 525, 539 (1st Cir. 1995), cert. denied, 116 S.Ct. 1044 (1996). Because a single past incident will not support an inference that plaintiffs are likely to be detained again, they must provide other grounds to meet their burden, which they have failed to do.

21

See, e.g., Kolender v. Lawson, 461 U.S. 352, 355 n.3 (1983) (plaintiff's fifteen prior stops in two years under challenged law established "credible threat" of future injury to satisfy standing); Goff v. Nix, 803 F.2d 358, 361 n.6 (8th Cir 1986) (inmates still in prison are likely to be subjected to visual body cavity searches in future), cert. denied, 484 U.S. 835 (1987); Nicacio v. INS, 797 F.2d 700, 702 (9th Cir. 1985) (recurrent pattern of traffic stops of Hispanics supports standing of Hispanic plaintiffs); LaDuke v. Nelson, 762 F.2d 1318, 1323 (9th Cir. 1985) (farm laborer plaintiffs had standing to enjoin INS's standard pattern of warrantless searches of farm labor housing communities), amended by, 796 F.2d 309 (9th ir. 1986). Absent circumstances suggesting repetitive detentions, the plaintiffs' position with respect to standing is indistinguishable from Lyons. See also Stewart v. Lubbock County, Tex., 767 F.2d 153, 155 n.3, (5th Cir. 1985) (applying Lyons in context of injunction against strip search policy), cert. denied, 475 U.S. 1066 (1986); John Does 1-100 v. Boyd, 613 F. Supp. 1514, 1528-29 (D. Minn. 1985) (same). Thus, the plaintiffs' claim for injunctive relief is dismissed for lack of standing. See 1 Newberg § 2.09 (named plaintiffs' lack of standing causes dismissal of claim rather than denial of class

22

certification).

The plaintiffs might argue that the requested declaratory judgment is not "forward-looking relief" because it aims at the defendants' conduct against them in the past. In this case, however, the unconstitutionality of the defendants' policies, practices, and procedures is more properly considered in the context of the plaintiffs' damages claims under Rule 23(b)(3). See Lyons, 461 U.S. at 111-13 (equitable relief not available when an adequate remedy at law exists in a claim for damages); see also 1 Newberg § 4.14 (certification as Rule 23(b)(3) class preferable when damage claims predominate). Accordingly, I dismiss the claims for equitable relief and and thus cannot certify the proposed class under Rule 23(b)(2).

2. Rule 23(b)(3)

Two hurdles must be overcome to certify a class under Rule 23(b)(3): (1) common questions of law or fact must predominate over questions affecting only individual members, and (2) a class action must be "superior to other available methods" of adjudicating the case. Fed. R. Civ. P. 23(b)(3). The rule's functional focus was designed to permit a class to be certified when adjudicating common issues in a single action will achieve judicial economies and practical advantages without jeopardizing

23

procedural fairness.  1 Newberg § 4.24.

Courts have not developed a precise test to determine whether common issues predominate in the class but often look for "an essential common link among class members" that can be remedied through litigation.  1 Newberg § 4.25 at 4-86.  Thus, when the class shares issues of "overriding significance," such as a determination of the defendants' liability, so that separate adjudication of individual claims would be unnecessary, the shared issues predominate.  See 7A Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 1778 (1986).

As has been discussed, the plaintiffs' class is narrowly defined to include only individuals who were strip searched under one of the defendant counties' policies while being detained in protective custody or for an offense no greater than a misdemeanor that did not involve weapons or contraband.  The class definition permits an evaluation of objective factors to determine class membership.  Although a small number of class members may ultimately not be entitled to relief because prison officials had a reasonable suspicion to justify the strip search, the record does not contain any evidence to suggest that this will be a significant problem if the class is certified.  Thus, on the present record, I conclude that common issues concerning

24

the question of liability predominate over any individual liability questions.[6]

Although issues common to the class predominate over individual issues on the question of liability, the type and degree of injury[7] to each class member and the amount of damage claimed by each may present individual issues. The experiences of the named plaintiffs are illustrative. Pamela Moser alleges verbal harassment prior to and during the strip search. Nathan Strout alleges a lack of privacy and a guard brandishing a latex glove during the strip search. Sharon Wieprecht alleges that in addition to the strip search she was subjected to a visual body cavity inspection. However, a potential variety in individual damage claims does not necessarily derail class certification. See, e.g., Johns v. DeLeonardis, 145 F.R.D. 480, 485 (N.D. Ill.

---

[6] Although the defendants include three different county jails and each jail's administrators, supervisors, and correctional officers involved in the strip search policies and practices, they have not suggested that material differences existed among them which would raise questions as to individual class members.

[7] Courts have recognized that strip searches are "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1272 (7th Cir. 1983) (quotations and citations omitted); accord Boren v. Deland, 958 F.2d 987, 988 n.1 (10th Cir. 1992). In addition, strip searches may include a range of intrusiveness. See Blackburn v. Snow, 771 F.2d 556, 561 n.3 (1st Cir. 1985).

1992).  Instead, the class may be certified only as to liability while damage claims may be resolved, if necessary, in individual trials or in groups as subclasses.  See Fed. R. Civ. P. 23(c)(4); Manual for Complex Litigation § 30.15 (3d ed. 1995).

The second factor for Rule 23(b)(3) certification, superiority, depends on a comparative evaluation of alternatives to determine whether a class action is more or less fair, practical, and efficient than other available methods of adjudication.  1 Newberg § 4.27; 7A Federal Practice and Procedure § 1779.  The most obvious alternative would be for all plaintiffs to proceed individually.  The named plaintiffs argue that individual suits would be both inefficient, due to the number of plaintiffs, and unfair because many claims may be too small to support a suit.  See, also, Smith v. Montgomery County, Md., 573 F. Supp. 604, 613 (D. Md. 1983), appeal dismissed, 740 F.2d 963 (4th Cir. 1984).  Another alternative is joinder or intervention by interested parties.  If, after discovery and notice to potential class members, the class proves to be small enough, and if other factors support joinder rather than a class action, conditional certification may be withdrawn.  Based on the present record, however, I conclude that class adjudication would be superior to the alternatives and that none of the pertinent

factors listed in Rule 23(b)(3) counsel otherwise.

III. **CERTIFICATION AND NOTICE**

Plaintiffs have satisfied the prerequisites of Rule 23(a)(1)-(4), and the class, so defined, may be maintained under Rule 23(b)(3). Therefore, I order that the plaintiffs' civil rights action be certified as a Rule 23(b)(3) class for purposes of determining the defendants' liability.

The plaintiffs shall provide notice by first class mail to potential class members provided on defendants' lists whose present addresses can be determined through reasonable effort, and shall publish notice in the Manchester Union Leader, the Concord Monitor, and other newspapers of general distribution in Merrimack, Carroll, and Strafford Counties for a period that is sufficient to notify potential class members. The notices shall define the class as all persons who were detained in the Merrimack, Carroll, or Strafford Houses of Correction, under protective custody or for an offense no greater than a misdemeanor or a violation, which did not include the possession of weapons or contraband as an element of the offense, and who were subjected to a strip search pursuant to a custom, practice, or policy after December 3, 1990, in Merrimack County House of Corrections, and after February 15, 1992, in Strafford and

27

Carroll County Houses of Corrections.  The notices shall also comply with the requirements of Federal Rule of Civil Procedure 23(c)(2).

## CONCLUSION

Plaintiffs' motion for class certification (document no. 60) is granted as modified by this order.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

September 30, 1996

cc:  Dort Bigg, Esq.
     William Scott, Esq.
     Donald Gardner, Esq.
     Bruce Barron, Esq.
     James Loring, Esq.