LAWRENCE SMITH & others[1] *vs.* ERNEST C. CAGGIANO.

Suffolk.   April 16, 1981. — June 8, 1981.

Present: BROWN, CUTTER, & KASS, JJ.

*Consumer Protection Act,* Pleading, Unfair act or practice. *Pleading, Civil,* Complaint. *Res Judicata. Medical Assistance Program.*

Statute 1979, c. 406, § 1, eliminating the loss of money or property as an element of an action under G. L. c. 93A, is to receive only prospective application. [43]

In a complaint for relief under G. L. c. 93A, § 9, as in effect prior to St. 1979, c. 406, § 1, against a Medicaid provider for billing directly each of the plaintiffs, who were eligible for Medicaid assistance, rather than billing the State Medicaid agency, a broad assertion that the plaintiffs had suffered a loss of money and property as a result of the defendant's unfair and deceptive acts, taken together with details in the complaint alleging that the defendant had brought small claims actions against each plaintiff, that three of those actions went to judgment, and that another claim was assigned to a collection agency, was a sufficient allegation of "loss of money or property" to withstand a motion to dismiss. [43-46]

CIVIL ACTION commenced in the Superior Court Department on March 19, 1979.

The case was heard by *Dimond,* J., on a motion to dismiss.

*Harry A. Pierce* for the plaintiffs.

*Claudia H. Noack* for the defendant.

KASS, J.   On behalf of themselves and others similarly situated, the plaintiffs brought a class action[2] against Ernest C. Caggiano, "individually and d/b/a Caggiano Ambulance Service, Inc." (Caggiano).   In their complaint the plaintiffs

---

[1] Mildred Spencer, Patricia Daniello, William Mank and Anna Ventresca.

[2] Mass.R.Civ.P. 23, 365 Mass. 767 (1974).

allege that on different dates in 1976, 1977, and 1978, each of them received ambulance service from Caggiano, who was a Medicaid[3] provider. The plaintiffs further allege that they informed Caggiano of their eligibility for Medicaid assistance and their Medicaid numbers but that, nevertheless, Caggiano billed each of the plaintiffs directly, rather than the State Medicaid agency,[4] at a rate in excess of the amount which Caggiano could obtain for the services under Medicaid. As to each of the plaintiffs, Caggiano brought small claims actions in the East Boston Division of the District Court Department. The action against Smith was discontinued and the one against Ventresca was dismissed, but the other three went to judgment and, in the cases of Spencer and Daniello, "examination of judgment debtor" proceedings[5] followed. As to Mank, the complaint says that the judgment against him was followed by collection efforts on the part of the defendant. In the case of Ventresca, after two District Court actions (one against Rosalie Ventresca, the patient, and a second against her daughter, the plaintiff Anna Ventresca) were dismissed, Caggiano assigned the purported claim to a collection agency in Kansas City, Missouri. Alleging that the conduct described constituted unfair and deceptive acts and practices and that the plaintiffs suffered a loss of money and property as a conse-

---

[3] Medicaid is a program of medical care and assistance to persons whose income and resources are insufficient to meet the cost of necessary medical services. The Federal government underwrites a substantial percentage of the cost of Medicaid. Administration of the program is in the hands of the State (through the Department of Public Welfare), although there are Federal guidelines to be followed. See 42 U.S.C. § 1396 et seq. and G. L. c. 118E.

[4] Under Medicaid a fee schedule for medical services is established by the State Health Services Rate Setting Commission. G. L. c. 6A, § 32. A health care provider who elects to accept Medicaid payments must accept payments at the rates established by the Rate Setting Commission. G. L. c. 6A, § 35(3). G. L. c. 118E, § 18(3). Whoever charges for services in excess of rates established by the State violates 42 U.S.C. § 1396h(d)(1) (1976). See also 42 C.F.R. § 447.15 (1980).

[5] See G. L. c. 224, § 15, as amended by St. 1974, c. 414, § 2.

quence, the plaintiffs claim relief under G. L. c. 93A, § 9(1), as well as injunctive[6] and declaratory[7] relief.

The claimed unfair practice is that Caggiano, by ignoring the Medicaid eligibility of the plaintiffs and others, placed himself in a position to charge higher fees, and proceeded to exact higher fees, from the plaintiffs.

Upon a motion to dismiss made by the defendant under Mass.R.Civ.P. 12(b), 365 Mass. 755 (1974), a Superior Court judge ordered entry of judgment dismissing the action on the ground that the complaint failed to "indicate that the plaintiffs have suffered 'any loss of money or property, real or personal,' within the meaning of G. L. c. 93A, § 9(1)" as required by *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33, 44-45 (1975).

1. *The necessity of alleging loss of money or property.* By St. 1979, c. 406, § 1, the Legislature eliminated the loss of money or property as an element of an action under G. L. c. 93A, for injury from an unfair or deceptive act or practice. That amendment to c. 93A altered the nature of the rights which claimants may press and, therefore, despite the lavish attention to the subject by the parties in their briefs, we have no difficulty in concluding that the 1979 amendment is to receive only prospective application. *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914). *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 625-629 (1974). *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 87-88 (1979). *Gopen* v. *American Supply Co.*, 10 Mass. App. Ct. 342, 348 (1980). See *Murphy* v. *Charlestown Sav. Bank*, 380 Mass. 738, 742-743 (1980). On the basis of the text of G. L. c. 93A, § 9, which was in effect when the incidents underlying the complaint occurred, it was necessary to plead loss of money or property.

2. *Does the complaint allege loss of money or property?* Paragraph four of the complaint says that, "Plaintiffs are persons who . . . suffered a loss of money and property as a

---

[6] G. L. c. 214, § 1.

[7] G. L. c. 231A, § 1.

result of" the defendant's unfair and deceptive acts. Literally, the complaint pleads the requisite "loss of money or property" component of the statutory action and, in view of the generous attitude we accord complaints in testing whether they assert a claim, *Nader* v. *Citron*, 372 Mass. 96, 98 (1977),[8] appears to make it over the threshold. See, e.g., *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 82 (1977), where a broad allegation of loss of money was sufficient.

After that initial broad allegation of loss, however, the complaint recites the details of the acts by which the plaintiffs are aggrieved and the manner in which they have been injured. It is necessary to inquire, as the defendant Caggiano asks us to do, whether the injuries described add up to something other than loss of money or property and, accordingly, neutralize — indeed, negate — the broad allegation of loss of money or property. If, among many specific facts alleged in a complaint there are none which flesh out a particular skeletal fact essential to making out a claim, a court can infer that the vital facts do not exist and must treat the broad assertion as too vague or insubstantial. See *O'Brien* v. *DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976); *Kadar Corp.* v. *Milbury*, 549 F.2d 230, 233 (1st Cir. 1977).

We are of opinion that the plaintiffs against whom Caggiano obtained judgments have sustained a loss of money. The judgments have established a debt, execution may issue on those judgments, and anyone inquiring into the financial status of the plaintiffs subject to the judgments would, realistically, consider each of them poorer by the amount of the judgment rendered. Loss does not turn, as Caggiano insists, on the flow of dollars from the plaintiffs' hands to his. So, for example, a tort plaintiff may recover as compensatory losses medical bills incurred, but not yet paid. *Arwshan* v. *Meshaka*, 288 Mass. 31, 34 (1934). *Daniels* v. *Ce-*

---

[8] See also *Charbonnier* v. *Amico*, 367 Mass. 146, 152-153 (1975); *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 87 (1979); *Coolidge Bank & Trust Co.* v. *First Ipswich Co.*, 9 Mass. App. Ct. 369, 370-371 (1980).

*leste,* 303 Mass. 148, 150-151 (1939). Taxpayers, whether on an accrual or cash basis, understand that gain or loss may result from the receipt of an intangible, e.g., a stock option, or writing off an intangible, e.g., depreciation. See *Commissioner* v. *Smith,* 324 U.S. 177, 181-182 (1945); *Commissioner* v. *Hansen,* 360 U.S. 446, 463-466 (1959). In *Homsi* v. *C.H. Babb Co.,* 10 Mass. App. Ct. 474, 476-477 & 480-481 (1980), we treated an intangible loss, the loss of potential interest on a deposit not timely returned, as a loss of money within the meaning of G. L. c. 93A. The plaintiffs against whom Caggiano obtained judgment have suffered loss of money as surely as if they had given promissory notes in payment of Caggiano's fees. "Money," as the court said in *Baldassari* v. *Public Fin. Co.,* 369 Mass. at 45, means "money," but its loss may occur short of a physical transfer of legal tender. To insist on so literal a loss would ignore that portion of *Baldassari* which said, "[W]e take note again . . . that the statute [G. L. c. 93A] was designed to meet a pressing need for an effective private remedy, and again declare that traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice." *Id.* at 40-41. The court also said in *Baldassari* that "[a] different question would be presented if it were alleged that the plaintiffs paid debts they did not owe, lost wages or other income, or suffered expense." *Id.* at 45.

The record does not indicate whether any of the named plaintiffs has incurred legal expenses in connection with the collection proceedings against them, and the plaintiffs do not yet know whether others in their class have sustained such expenses. At this initial stage of pleading, the plaintiffs should not be foreclosed from establishing such facts. For purposes of stating a claim under G. L. c. 93A, § 9(1), a little loss of money goes a long way. *Homsi* v. *C.H. Babb Co.,* 10 Mass. App. Ct. at 476-477 & 480-481.

We do not think that the loss of the opportunity to have the ambulance services paid by the Medicaid system [9] in and

[9] Under Massachusetts Public Assistance Policy Manual (MPAPM) c. VII, § A, Part 1, par. I(c)(1)(a) (rev. July, 1976), Medicaid will not

of itself constitutes a loss of money or property by the plaintiffs because, as Medicaid operates, the payment is to the provider, not the recipient, of services. The failure by a Medicaid provider to seek reimbursement from the Medicaid system, therefore, does not put the recipient of services out-of-pocket unless, as here, the provider presses his private claim to the point of litigation, or the recipient of the services pays the bill rendered by the provider.

3. *Other issues raised.* (a) If the action was mistakenly not brought against the corporate defendant, as Caggiano asserts, the defect is easily remedied by an amendment at this early stage of the litigation. Mass.R.Civ.P. 15(a), 365 Mass. 761 (1975). According to the record, service of the complaint was made on the corporate defendant.

(b) The suggestion by Caggiano that ambulance services, because of their emergency nature, should be excused from compliance with the requirements of the Medicaid program has no foundation in statute, regulations or common sense. Ninety days after the service is given (note 9, *supra*) is sufficient time to make the proper billing, free of the confusion of the moment.

(c) None of the small claims actions constituted a prior adjudication of the c. 93A claims which the plaintiffs now make. District Municipal Courts Rule of Civil Procedure 174 provides that no counterclaim in a small claims case shall be considered compulsory. Moreover, since the plaintiffs seek injunctive relief, as well as damages, the District Court would not have had jurisdiction over much of the counterclaim. This is not remotely a case of claim splitting. Compare *Bradford* v. *Richards,* 11 Mass. App. Ct. 595 (1981).

*Judgment reversed.*

pay for services unless the provider applies for payment within ninety days of delivering the services. Caggiano did not make a timely application on account of any of the five named plaintiffs.