PARA/MEDICAL SUPPLIES, INC. *vs.* CITY OF CAMBRIDGE
& others.[1]

Middlesex.    March 15, 1982. — June 25, 1982.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Contract*, With municipality, Bidding for contract. *Municipal Corporations*, Contracts.

In an action by an unsuccessful bidder on a city's ambulance service contract, against the city and another bidder, alleging that the defendant bidder had made materially false and misleading statements in its bid, the defendants' respective motions for summary judgment and to dismiss the action were properly allowed, where the complaint, together with the affidavits filed in support of the motion for summary judgment, showed that the city had known of the alleged misrepresentations, had investigated the plaintiff's claims, and had found no attempt to mislead the city; that the defendant bidder had complied with the city's specifications; and that the defendant bidder's rates were the best rates available. [89-91]

CIVIL ACTION commenced in the Superior Court Department on February 6, 1981.

The case was heard by *Bennett, J.,* on respective motions to dismiss and for summary judgment.

*Jonathan J. Margolis* for the plaintiff.

*Edward D. McCarthy* for James L. Sullivan & another.

*Ronald J. Herisko* for Professional Ambulance & Oxygen Service, Inc.

PERRETTA, J.    Para/Medical Supplies, Inc. (Para/Medical), a disappointed bidder on an ambulance service contract for the city of Cambridge, brought an action in the Superior

---

[1] The city manager of Cambridge and Professional Ambulance & Oxygen Service, Inc.    The city manager and Cambridge will be collectively referred to herein as the city.

Court against the city and Professional Ambulance & Oxygen Service, Inc. (Professional), also a bidder on the contract, alleging that Professional had made materially false and misleading statements on its bid. Para/Medical sought damages and an injunctive order to prevent the city from awarding the contract to Professional, against whom it also alleged violation of G. L. c. 93A, § 11. The city moved to dismiss the complaint under Mass.R.Civ.P. 12(b)(6), and Professional moved for summary judgment under Mass.R. Civ.P. 56, 365 Mass. 755, 824 (1974). The defendants' motions were allowed. We affirm the ensuing judgments.

1. *The Facts.*

We relate the facts as they are set out in the complaint and the attached exhibits.[2] On December 4 and 11, 1980, the city announced its intention to solicit bids on a three-year contract for ambulance service. Para/Medical, Professional, and a third company filed bids, all of which were rejected by the city. New bids were solicited and received on January 20, 1981, wherein both Para/Medical and Professional offered to provide ambulance service at no charge to the city. Reimbursement would, instead, be sought from insurance carriers, public assistance programs, and the patients. See, e.g., *Smith* v. *Caggiano*, 12 Mass. App. Ct. 41, 42 (1981).

Two days after the bids were opened, Para/Medical wrote to the city's purchasing agent, alleging that there were "certain discrepancies" between the facts recited on Professional's bid and the information furnished by it on its application for recertification of its license filed on December 24, 1980, with the Office of Emergency Medical Services

---

[2] It does not appear that either the attached exhibits or the affidavits filed by Professional in support of its motion for summary judgment were excluded by the judge in passing on the city's motion to dismiss. Before us, the city asserts that all parties assumed that the judge was treating the city's motion as one brought under rule 56. Para/Medical argues only that the matters submitted in support of the motions constitute nothing more than insufficient, bare denials of its allegations. We treat the motion as the parties assumed it to be, one brought under rule 56. Cf. *Capodilupo* v. *Petringa*, 5 Mass. App. Ct. 893, 894-895 (1977).

of the Department of Public Health.  See 105 Code Mass. Regs. 170.000 et seq. (1978).  Although the letter enumerates about fifteen instances of "discrepancies," the complaint and the argument before us rest on only two, and we limit our discussion accordingly.

In its letter of January 22, 1981, to the city, Para/Medical directed the city's attention, first, to the fact that Professional listed on its bid that its personnel consisted of fifteen emergency medical technicians (EMTs) and seven other persons, whereas on its license application Professional listed only twelve EMTs.  Four persons listed on Professional's bid did not even appear on the license application. The second deviation which Para/Medical emphasized was that it appeared from Professional's license application that it was licensed to operate fewer ambulances than set out in its bid.  Para/Medical concluded its letter by stating that "[i]n view of the foregoing material deviations . . . [Professional] should be disqualified from consideration for the instant contract."

The city's purchasing agent immediately directed Professional to respond to Para/Medical's claims, and Professional did so by a letter dated January 28, 1981.  Professional pointed out that the bid required information as to the number of the bidder's full-time and part-time employees. (The bid form attached to Para/Medical's complaint shows that Professional's statement is entirely accurate.)  Professional explained that the apparent "discrepancies" between its bid and its earlier license application resulted because some of its EMTs fell within both the full-time and the part-time categories and that new employees from Central Ambulance Service, Inc. (Central), were in the process of being "absorbed" by Professional.  As to the number of ambulances available to it, Professional stated that the bid asked for the number of ambulances "owned or leased." Again, the bid form bears Professional out on this point. Professional explained to the city that Professional leased additional ambulances from Central.  Professional further represented that it was negotiating for the purchase of ambulances from

Central and that when the negotiations were successfully completed, Professional would have the vehicles inspected and registered for use by Professional. The fact that sale negotiations between Central and Professional were taking place was substantiated by Central in a letter to the purchasing agent dated January 28, 1981, stating that "[w]e are confident of the sale."

On January 30, 1981, the purchasing agent wrote to Para/Medical, advising it that the city's Ambulance Service Committee (the Committee) had investigated Para/Medical's claims, that it had reviewed and evaluated the bids, that the Committee found that Professional had not tried to mislead the city, and that Professional had responded properly to the bid specifications. The purchasing agent further informed Para/Medical that the Committee had recommended that the contract be awarded to Professional and that the city intended to follow the recommendation because "it is clearly in the public's best interest . . . whereas [Professional has] met or exceeded our established specifications while proposing the best available rates to the public."[3]

Para/Medical's response to the city's announced intention was to bring this action. In these proceedings, Para/Medical has never denied, either in its complaint or by affidavit, the facts asserted by Professional on January 28, 1981, in explanation and reconciliation of the claimed "discrepancies." Nor has Para/Medical contradicted a single fact contained in the purchasing agent's letter of January 30, 1981.

2. *The Complaint Against the City.*

Para/Medical argues that because the city solicited and advertised for the bids, the city must be held to the stand-

---

[3] The affidavits filed by Professional in support of its motion for summary judgment were given by the president of Professional, the city purchasing agent; and a member of the Committee. These sworn statements verify the facts set out in the purchasing agent's letter of January 30, 1981, as well as supply additional facts which are not particularly relevant to the present dispute.

ards applicable to competitive bidding, even though by reason of G. L. c. 43, § 28, bids were not required in the first instance. These standards are violated, the argument continues, if the city awards a contract on the basis of information which it knows to be false or at variance with the specifications. See *Datatrol Inc.* v. *State Purchasing Agent*, 379 Mass. 679, 696-697 (1980), and authorities therein cited. Para/Medical concludes from this that it must be afforded the opportunity to prove that the statements made by Professional on its bid were materially false.

It makes no difference in the present instance whether competitive bidding standards control because there is nothing which even suggests that they were violated. Professional's asserted bid answers were accurate and responsive to the bid specifications and the city agreed. Para/Medical never disputed that assertion and, indeed, the bid form attached to Para/Medical's complaint supports Professional and the city. Even if Professional's bid were viewed as an expansive interpretation of the city's specifications, there is still not the slightest indication by Para/Medical that Professional's bid was submitted and treated "upon a basis different from that of any other bidder." *Id.* at 697, quoting *Sweezey* v. *Mayor of Malden*, 273 Mass. 536, 542 (1931).

Assuming the truth of the facts, but not of the conclusions, set out in Para/Medical's letter to and complaint against the city, we think that Para/Medical wishes the opportunity to prove that which no one disputes. Professional's bid information does differ from that furnished by it on its license application. But that fact and the city's knowledge of it does not, without more, require review of the city's decision with the aim that the court substitute its judgment for that of the city. "In the absence of the not unusual provision requiring contracts to be awarded to the lowest responsible bidder such a requirement is not to be implied, but it is to be inferred that the awarding of contracts is left to the reasonable judgment of the municipal officers charged with responsibility therefor." *Archambault* v. *Mayor of Lowell*, 278 Mass. 327, 332 (1932). See *Datatrol Inc.* v. *State Purchasing Agent*, 379 Mass. at 698 n.15.

Para/Medical Supplies, Inc. v. Cambridge.

In view of the undisputed facts that the city investigated Para/Medical's claims and found that Professional had not attempted to mislead the city, that Professional had complied with the specifications, and that Professional's rates were the best rates available to the public, there is no basis for disturbing the city's decision. "Absent bad faith, fraud, arbitrariness or capriciousness, we are unwilling to substitute our judgment for the good faith judgment of the [city]." *Urban Transp., Inc.* v. *Mayor of Boston*, 373 Mass. 693, 698 (1977).

3. *The Complaint Against Professional.*

In its complaint against Professional, Para/Medical alleges that it was deprived of the award of the contract because of Professional's materially false and misleading bid.

In support of its motion for summary judgment, Professional presented affidavits attesting to the uncontradicted facts that at the time of the city's decision to award the contract to Professional, the city knew of the alleged misrepresentations, that it investigated the claims of Para/Medical and Professional's bid responses, and that it had concluded that Professional had complied with the specifications and had not attempted to mislead the city. In view of these undisputed assertions, we do not see how it can be said that the city's award of the contract was made in reliance upon false information furnished by Professional. Cf. *York* v. *Sullivan*, 369 Mass. 157, 162 (1975); *Gopen* v. *American Supply Co.*, 10 Mass. App. Ct. 342, 345-346 (1980).

4. *Conclusion.*

It follows from what we have said that there was no error in the ordering of judgments in favor of the city and Professional.

*Judgments affirmed.*