Lauriat, J.
Karen Fitzgerald (“Fitzgerald”), filed this medical malpractice action against Harold L. Goldberg, M.D. and Harold L. Goldberg, M.D., Inc. (collectively “Goldberg”) for negligence (Count I), breach of contract (Count II), informed consent (Count III), and violation of G.L.c. 93A (Count IV), and against Warren J. Becker, M.D. and Warren J. Becker, M.D., Inc. (collectively “Becker”) for negligence (Count V), breach of contract (Count VI), informed consent (Count VII), and violation of G.L.c. 93A (Count VIII).
Goldberg and Becker have each now moved for summary judgment on all counts of Fitzgerald’s complaint. For the following reasons, Goldberg’s motion for summary judgment on Counts I, II, III, and IV is denied. Becker’s motion for summary judgment on Counts V, VI, VII, and VIII is also denied.
BACKGROUND
In June of 1969, Fitzgerald began treating with Goldberg, for issues relating to depression. Her mental condition worsened throughout that summer, resulting in a psychiatric hospitalization after a failed suicide attempt. Fitzgerald enrolled in nursing school in the Fall of 1969, but continued to treat with Goldberg until her graduation in 1973. The severity of her mental status resulted in multiple psychiatric hospitalizations and several episodes of suicidal gestures, attempts, and self-mutilation associated with the occurrence of her menstrual period.
On April 4, 1972, Goldberg referred Fitzgerald to Becker for the purpose of attempting to suppress her menstrual period. On that date, Becker prescribed Depo Provera. This drug was successful in suppressing her menstrual periods for nearly one year. On July 23,1973, Becker saw Fitzgerald a second time in order to restart her menstrual periods.
Fitzgerald received no psychiatric treatment from 1972 until 1976. In the summer of 1976, she experienced another episode of major depression and again came under the care of Goldberg. Throughout the summer, Fitzgerald’s mental status deteriorated, resulting in a psychiatric hospitalization during which she had several episodes of self-mutilation associated with her menstrual period. Fitzgerald thereafter resumed regular psychiatric treatment with Goldberg. In the course of that therapy, Goldberg discussed with her the possibility of undergoing a hysterectomy.
On March 29, 1977, Fitzgerald returned to Becker where she discussed with him the possibility of under *219 going a hysterectomy. She subsequently decided to undergo the operation and notified Becker’s office of her decision on or before April 20, 1977. On May 4, 1977, Goldberg sent Becker a letter recommending that he perform the hysterectomy on Fitzgerald, as it was Goldberg’s opinion that “no amount of psychotherapy can alter [Fitzgerald’s overwhelming difficulty accepting her femininity].” After receiving this letter, Becker performed the hysterectomy on May 19, 1977.
Becker examined Fitzgerald post-operatively on June 20, 1977 and noted no medical complications. On May 9, 1978, Fitzgerald wrote to Becker thanking him for performing the hysterectomy. In the letter, she stated, “The relief and happiness I feel knowing that never again will I find myself in a psychiatric hospital, never again will I be so depressed and hate myself so deeply, and never again will I need to destroy myself and cut my wrists — this far outweighs any sadness of my inability to have children.”
Fitzgerald continued to see Becker for annual gynecological services through October of 1992. Fitzgerald’s last appointment with Goldberg was in July of 1978. She received no psychiatric treatment from July of 1978 until March of 1992. In 1992, Fitzgerald’s severe depression returned. She began seeing Shirley Katz (“Katz”) for psychotherapy, who referred her to Dr. Peggy Johnson (“Johnson”) for psychopharmacology. It was in the course of her treatment with Katz and Johnson, that Fitzgerald alleges she became aware of the “negligent and/or harmful ramifications of her hysterectomy.” On December 8, 1994, Fitzgerald filed the present action against Goldberg. She subsequently amended her complaint to include claims against Becker.
DISCUSSION
I.
Goldberg and Becker have moved for summary judgment on the ground that Fitzgerald’s claims are barred by the applicable statute of limitations.[1] Actions of contract or tort for medical malpractice must brought within three years after the cause of action accrues. G.L.c. 260, §4. Generally, in medical malpractice cases, a cause of action for personal injuries accrues “when the plaintiff learns, or reasonably should have learned, that [s]he has been harmed by the defendant’s conduct.” Riley v. Presnell, 409 Mass. 239, 243 (1991) (citations omitted). The plaintiff “need not apprehend the full extent or nature of an injury in order for a cause of action to accrue.” Id.
Where, as here, the plaintiff asserts that the injury was inherently unknowable, Massachusetts applies the discovery rule to determine when a cause of action accrues. Id. at 240; Pagliuca v. Boston, 35 Mass.App.Ct. 820, 824 (1994); Lÿoi v. Massachusetts Bay Transportation Authority, 28 Mass.App.Ct. 926, 928 (1990). Where the discovery rule applies, the statute of limitations begins to run when an injury is no longer inherently unknowable, and a reasonably prudent person in the plaintiffs position, reacting to any suspicious circumstances of which she might have been aware, should have discovered the harm and the cause of the harm. Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990); Hendrickson v. Sears, 365 Mass. 83, 89-90 (1974). The question of when a plaintiff knew or should have known of her cause of action is one of fact for the trier of fact. Riley, 40 Mass. at 240.
The defendants assert that Fitzgerald knew or should have known of her injury either at the time of her operation on May 19, 1977, or at the very latest, at the time she sent the letter to Becker on May 9, 1978. It is undisputed that Fitzgerald signed a consent form prior to the operation. It is also clear from her letter to Becker one year later that Fitzgerald knew that as a result of the operation, she could not bear children. This argument assumes, however, that a properly performed hysterectomy was in itself a harm or injury.
By contending that Fitzgerald’s inability to bear children is the only harm she alleges, the defendants misconstrue her complaint.[2] A fair reading of the complaint shows that Fitzgerald is claiming that she was injured by the defendants’ acts because the procedure was unnecessary and did not treat her depression. She alleges further that by prescribing a hysterectomy as treatment for her depression, the defendants caused her to be deprived of further appropriate treatment for her depression.
Notwithstanding her knowledge that she could no longer bear children, there is a genuine issue of material fact as to when she knew she had been harmed. At the time the hysterectomy was performed, Fitzgerald believed that it had been properly prescribed to treat her severe depression and that it did in fact alleviate her suffering. It was only in March 1992, when Fitzgerald consulted with Katz and Johnson after her depression returned, that Fitzgerald claims she became aware of her injury. At this time, Katz and Johnson told her that a hysterectomy, however properly performed, was not an accepted or effective treatment for depression. It is at this point, Fitzgerald alleges, that she realized that the hysterectomy was unnecessary and that she had been harmed by defendants.
The court recognizes that Fitzgerald sought no psychiatric treatment from 1978 until March 1992. The court is also aware that Fitzgerald was a licensed nurse who had been employed in the nursing field continuously since 1973. Thus, there may have been a point during this period at which a reasonably prudent person in Fitzgerald’s position should have been aware of the harm. However, there exists a genuine issue of material fact regarding when, if at all, before March 1992 Fitzgerald should have known of her injury. Summary judgment is thus inappropriate. See Mass.R.Civ.P. 56(c). Becker’s and Goldberg’s mo *220 tions for summary judgment on Counts I through VII are denied.
II.
Becker has also moved for summary judgment on Count VIII of Fitzgerald’s complaint, which alleges a violation of G.L.c. 93A.[3] Chapter 93A, §2 provides that “unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful.” Becker argues that G.L.c. 93A does not apply to the physician/patient relationship, as it falls outside the scope of “trade or commerce.” “Trade” and “commerce” include “the offering for sale ... of any services. G.L.c. 93A, §1.
No Massachusetts appellate court has directly addressed whether the physician/patient relationship is covered by c. 93A. However, if the facts upon which the c. 93A claim rests are identical to those asserted in support of a medical malpractice claim, then c. 93A likely applies. See Riley v. Presnell, 409 Mass. 239, 243 (1991) (in medical malpractice action, only c. 93A claim may have been filed within the applicable statute of limitations); Little v. Rosenthal, 376 Mass. 573, 576 (1978) (where c. 93A claim is based upon same facts as counts for medical malpractice, plaintiff must proceed through medical malpractice tribunal). See also Hutcheon v. Randolph, Civil Action No. 94-5528 (Middlesex Super. Ct. Jan. 18, 1995) (“physicians are subject to the provisions of c. 93A”); Bartels v. Leighton, Civil Action No. 91-233 (Hampden Super. Ct. July 6, 1994) (as practice of medicine involves the rendering of services to the public, c. 93A applies); Palermo v. Brennan, Civil Action No. 92-1083 (Suffolk Super. Ct. May 17, 1993) (“psychiatrist is engaged in trade or commerce for the purposes of c. 93A”). But see Palermo v. Brennan, Civil Action No. 92-1083 (Suffolk Super. Ct. Sept 2, 1997) (plaintiff not entitled to recover under c. 93A for sexual relationship with defendant doctor which was personal in nature and did not arise in the context of doctor’s professional medical practice). The violations of c. 93A that Fitzgerald alleges are based upon the same facts as those upon which her medical malpractice claims are based. Thus, the court concludes as a matter of law that c. 93A applies to her relationship with Becker.
A determination that c. 93A applies to the physician/patient relationship does not end the analysis, however. Prior to 1979, c. 93A required that in order to bring an action under Section nine, a plaintiff must have suffered a loss of money or properly as a result of another person’s use of an unfair or deceptive act or practice. As Becker correctly points out, G.L.c. 93A, §9 was amended in 1979, eliminating the requirement of pleading loss of money or property. St. 1979, c. 406, §1. This amendment was designed to be applied only prospectively. Smith v. Caggiano, 12 Mass.App.Ct. 41, 43 (1981). Since the acts which underlie Fitzgerald’s complaint predate the 1979 amendment, the statute as it existed prior to the 1979 amendment must apply.
In Count VIII of her complaint, Fitzgerald alleges that she has “incurred medical expenses in an amount to be determined at trial.” Becker alleges that this does not satisfy the requisite pleading of “loss of money or property.” The Supreme Judicial Court has stated that “money” means “ ‘money’, but its loss may occur short of a physical transfer.” Smith, 12 Mass.App.Ct. at 45 (citing Baldassari v. Public Fin. Trust, 369 Mass. 33, 45 (1975). As such, “a tort plaintiff may recover as compensatory losses medical bills incurred, but not yet paid.” Id. at 44 (citing Arwshan v. Meshaka, 288 Mass. 31, 34 (1934). Cf. Wolfberg v. Hunter, 385 Mass. 390, 397 (1982) (claim for damages for emotional distress does not involve a loss of money or property). In accordance with the wide latitude given complaints in testing whether they state a claim, Fitzgerald has sufficiently alleged a loss of money to sustain a claim under c. 93A.
Becker further contends that Fitzgerald’s claims sound strictly in negligence. A negligent act, by itself, does not constitute a violation of G.L.c. 93A, §2. Glickman v. Brown, 21 Mass.App.Ct. 229, 234 (1985). A deceptive act which is the result of a defendant’s negligence is actionable, however, without more. Id. at 235. A physician may not misrepresent the truth simply because he has not made reasonable efforts to ascertain it. Id.
Fitzgerald alleges that Becker recommended that she undergo the hysterectomy. She further asserts that Becker was negligent “in performing a hysterectomy on [her] solely to treat a psychiatric condition, when [he] knew, or in the exercise of reasonable care, should have known that such an operation . . . would not treat her medical condition and would cause [her] injury,” and in “failing to disclose to [her] that the hysterectomy . . . was of no medical benefit.” The degree of deception as a result of Becker’s alleged negligence is thus actionable. Id. Such a ruling is consistent with the purpose of c. 93A of “providing proper disclosure of information and a more equitable balance in the relationship of consumers to persons conducting business activities.” Purity Supreme, Inc. v. Attorney General, 380 Mass. 762, 776 (1980) (citations omitted).
In his summary judgment motion, Becker has only argued that “the facts presented by the plaintiff do not even remotely resemble a claim under c. 93A.” The court concludes, however, that Fitzgerald has asserted facts sufficient to state a cause of action under c. 93A. As such, Becker “has the burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976). This burden may be met either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating “that the party opposing the motion has no reasonable expectation of proving an essential *221 element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Becker has neither submitted affirmative evidence nor has he demonstrated that Fitzgerald has no reasonable expectation of proving an essential element of her claim. Summary judgment is therefore inappropriate. Becker’s motion for summary judgment on Count VIII is denied.
ORDER
For the foregoing reasons, (1) Defendants, Harold L. Goldberg, M.D.’s and Harold L. Goldberg, M.D., Inc.’s Motion for Summary Judgment is DENIED, and (2) the Motion of the defendants, Warren J. Becker, M.D., and Warren J. Becker, M.D., Inc., for Summary Judgment is DENIED.

 As both Goldberg and Becker raise identical arguments in support of their motions for summary judgment, the court addresses them together.

 In fact, Fitzgerald claims, in all counts, that as a result of Defendants’ actions, she “has suffered and continues to suffer damages, has sustained pain and suffering, permanent physical injury, has been permanently deprived of the ability to bear children, has sustained severe emotional tension, confusion, severe interference with personal and family life, isolation, a destruction of plaintiffs self-esteem, and severe withdrawal from friends and family, together with loss of wage earning capacity and the inability to maintain a career.”

 Goldberg has not raised the applicability of c. 93A to his relationship with Fitzgerald. He asserts only that all of Fitzgerald’s claims, including the c. 93A claim, Count IV, are barred by the applicable statute of limitations. Because he has not joined Becker’s argument that c. 93Ais inapplicable, the court will not address him on this matter.